IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF INDIANA

INDIANAPOLIS DIVISION

| | |
|---|---|
| EVELYN MILLS KEATON,<br>on her own behalf and for any similar situated persons | ) |
| | ) |
| ESTATE OF HARVEY KEATON BY EVELYN LECIA<br>KEATON AS PERSONAL REPRESENTATIVE      , | ) |
| | ) |
| PLAINTIFF(S) | ) |
| v. | ) |
| | ) |
| KOPKA PINKUS DOLIN LLC | ) |
| (counsels Christina Essex and James Milstone in this case) | ) |
| | ) NO.   1:16-cv-2129 |
| JUDGE HEATHER WELCH, MARION SUPERIOR CIVIL 1 | ) |
| PRESIDING JUDGE | )COMPLAINT |
|           in their official capacities | ) |
| DEFENDANT(S) | ) |

**COMPLAINT FOR INJUNCTIVE, EQUITABLE AND DECLARATORY RELIEF AND**

**INDIVIDUAL COMPLAINT FOR DAMAGES**

_____

**Introduction**

1. Mrs. Evelyn Mills Keaton is a disabled person. She saw her husband, Harvey Keaton, be hit on the head by a steel gate at the Summit Emerson McDonalds at 2551 N Emerson in Indianapolis, Indiana on July 3, 2011. Mr. Harvey Keaton, now deceased, was disabled at the time of his injury on July 3, 2011 while he was a patron/guest at the Summit Emerson McDonalds at 2551 N Emerson in Indianapolis, Indiana.

2. Mrs. Keaton is a retired schoolteacher who taught for 48 years. She suffered an aneurysm November of 2006 the Friday before Thanksgiving being found collapsed in her chemistry classroom as school was opening that day. Mrs. Keaton survived and had to undergo extensive physical therapy and speech therapy. As a result of suffering the aneurysm, Mrs. Keaton ended up having expressive aphasia and other physical disabilities and currently uses a walking stick to walk due to advanced arthritis. Mr.

Harvey Keaton was diagnosed with an enlarged prostate and had medical issues related to that which impacted his physical movement and health prior to July 3, 2011.

3. Mrs. Keaton saught, thru counsel, an accommodation in the state courts to testify in depositions using the deposition on written questions method and for the state trial court to make a reasonable accommodation for her given her expressive aphasia and other disabilities. There was seeming indiference to this need for accommodation by Judge Welch, the Marion County Courts, and Kopka Pinkus attorneys multiple times when the original complaint stating a Title 2 Americans With Disabilites Act (ADA) violation was filed.

4. When the plaintiff, Mrs. Keaton, alerted the public entity to her need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required. To show deliberate indifference in the Title II (ADA) and Section 504 (Rehabilitation Act) context, the disabled must establish that Defendants (1) knew that harm to a federally protected right was substantially likely and; (2) failed to act on that likelihood. See *PRAKEL v. Indiana*, 100 F. Supp. 3d 661, 685 (Ind. S.D. 2015).  Mrs. Keaton had been denied her request for accommodation multiple times. Requests to allow her physician, Dr. Karen Heard of IU Health, to testify about her disabilities and need for accommodation had been objected to by Kopka Pinkus counsel, Christina Essex, and denied by Judge Welch or one of her magistrates in Marion Superior Civil 1 also multiple times in November of 2015 and prior to the March 4, hearing. Dr. Heard had written a statement to the court stating that Mrs. Keaton required accommodation and assistance to complete depositions and stated that she should do depositions on written questions with an assistant there to help her if needed.

5. The original complaint's ADA Title 2 case was filed because of the seeming indifference of Judge Welch, Kopka Pinkus counsel and the Marion County Courts to the need to accommodate Mrs. Keaton's expressive aphasia and the denial of efforts by counsel to get them to hear from Mrs. Keaton's physician, Dr. Heard of IU Health, who could better explain why she had written that Mrs. Keaton needed accommodation to complete a deposition given her disabilities. Further, the Indiana Court of Appeals

refused to hear the interlocutory appeal on Mrs. Keaton's failure to receive accommodation perceiving what is her right under the ADA as discretionary where counsel asserts it is of right under the ADA.

6. Judge Heather Welch of Marion Superior Court Civil 1 in Marion County, Indiana did finally hold a hearing after this federal ADA case was filed. The hearing was held on March 14, 2016 with Mrs. Keaton's physician, Dr. Karen Heard of IU Health, being able to testify after Judge Welch or her magistrate denying twice previously counsel's request that Dr. Heard testify before the trial court based on the objection of Kopka Pinkus attorney/opposing counsel, Christina Essex.

7. After Dr. Heard's testimony at the March 14th hearing, Judge Welch issued a ruling and ordered that a guardian ad litem who is a nurse-attorney be appointed for Mrs. Keaton who can be at any depositions to assist and monitor any depositions and Mrs. Keaton's health and how it is impacting her and her stress levels, and also held that Mrs. Keaton would receive information about the topics of the questions she would be asked ahead of time from counsels to accommodate her expressive aphasia and other conditions and that things would proceed in a manner that respected the limitations of her expressive aphasia and ability to communicate and need to have assistance in communicating as needed.

8. However, at the 2nd deposition session, Kopka Pinkus counsel Christina Essex repeatedly asked Mrs. Keaton the same questions that she had been asked at the 1st deposition session. Mrs. Keaton became visibly agitated because in spite of her saying she had nothing more to say and could not answer, Ms. Essex kept on asking her the same questions repeatedly, which resulted in Mrs. Keaton turning red, becoming visibly agitated and things reaching a place where it was becoming detrimental to her health. The depositions had to be stopped.

9. Kopka Pinkus counsel, Christina Essex, filed a 2nd motion to dismiss the state court proceedings based on Mrs. Keaton's deposition issues then renewed that due to her not being able to continue with the 2nd deposition session and complete asking questions of Mrs. Keaton, even though she was asking the same/similar questions that had been asked at the 1st deposition session. As of yet, there has been no state court ruling on that 2nd motion to dismiss based on Mrs. Keaton's depositions.

10. This matter is being filed because it is improper for that 2nd motion to dismiss based on Mrs. Keaton's deposition participation to have been filed at all given that Mrs. Keaton is a disabled American who did not receive an adequate enough of an accommodation and acted to preserve her health because the state trial court accommodation was inadequate to what was legally required for her to receive as an accommodation as a disabled American per the ADA.

11. Further, it is improper for Kopka Pinkus counsel to maintain a motion to dismiss and to renew that 2nd motion to dismiss on the ground of Mrs. Keaton not completing the deposition, where the depositions conducted did not afford Mrs. Keaton adequate dignity and accommodation as she is entitled to have under the Americans With Disabilities Act. That is partly the fault of Judge Welch not making an adequate enough of an accommodation as required by the ADA. But part of that also is Kopka Pinkus counsel Ms. Essex being overzealous asking Mrs. Keaton the same/similar questions that had already been asked and answered at a previous deposition session, which resulted in frustrations and problems speaking for an expressive aphasia sufferer and can lead to other medical issues for someone like Mrs. Keaton. But had Judge Welch made the accommodation that Dr. Welch, the physician of Mrs. Keaton said she needed--- to have assistance and to get the questions in advance--- none of the troubles that occurred in this case would have occurred. It would have been caught in advance that Mrs. Keaton is being asked the same/similar questions that she had already answered to the best of her ability.

12. There was an offer made to continue the deposition at a later date if Kopka Pinkus Ms. Essex submitted the questions that she wanted to ask of Mrs. Keaton to her guardian ad litem, but Kopka Pinkus counsel Ms. Essex wants to continue to maintain the motion to dismiss rather than work in a manner so that the deposition of Kopka Pinkus can be completed in a manner that respects the health and dignity of Mrs. Evelyn Mills Keaton, who is a disabled American subject to the protections of the ADA. So it begs the question if there really were any new questions to be asked at the 2nd deposition, or if it was an exercise to frustrate Mrs. Keaton who had already answered the same/similar questions at the 1st deposition session. Because Kopka Pinkus counsel Ms. Essex has not submitted questions to the guardian

4

ad litem, Mary Hoeller, indicating what other questions she wants to ask of Mrs. Keaton at a deposition, it is difficult to tell if there are any new questions to be asked or if Mrs. Keaton was appropriately frustrated being asked the same/similar questions she already had struggled to answer at the 1st deposition session.

13. Judge Welch, the presiding judge, did not make an adequate enough of an accommodation for Mrs. Keaton. Dr. Heard, the personal physician of Mrs. Keaton, stated that she needed assistance and to receive the questions in advance. Judge Welch appointed a guardian ad litem and provided topics of questions ahead of time but did not require that the questions be submitted ahead of time. Judge Welch failed to follow the advice of Dr. Heard to make the proper accommodation for Mrs. Evelyn Mills Keaton to be able to testify in depositions in a manner that affords her dignity and health.

14. No one anticipated that Kopka Pinkus Ms. Essex would ask the same/similar questions repeatedly at the 2nd deposition that had been asked at the 1st deposition session repeatedly so much so that counsel was citing to the page of the 1st deposition that she was asking the same question that had been answered.  Hence by doing that, Kopka Pinkus counsel put Mrs. Keaton in a position where she would become frustrated and have difficulties that could result in her having a medical event and indignity and distress and make it near impossible for her to speak with her expressive aphasia issues.

15. Additionally, Mrs. Keaton is an aneurysm survivor with a shunt in her head, and has high blood pressure, severe arthritis and other medical issues. If Mrs. Keaton is overly frustrated to the point she is turning red or her face is crinkling a lot, it could be a precursor to an adverse medical event. Mrs. Keaton, like anyone, has a right to look after her health as she tries to go thru life managing her multiple disabilities.

16. In *Reed v Illinois*, the state trial court made some accommodation for a party who had an involuntary speech communications disorder (tardive dyskinesia) for which some accommodation was made, but not an adequate enough accommodation per the 7th Circuit. ( decided by U.S. Ct of Appeals for the 7th

Circuit on  OCTOBER 30, 2015 No. 14-1745 ; case opinion is attached) That is what happened in

this matter. Mrs. Keaton received some accommodation, but not an adequate enough of an

accommodation or the full accommodation which her physician, Dr. Heard, of IU Health stated she needs

to be able to successfully participate in court deposition proceedings.

17. In the *Reed* case, Ms. Reed who is disabled with a speech communications disorder and physician

disabilities, (different from Mrs. Keaton but also similar in that she requires assistance and has serious

communications challenges )asked for before the trial began from the court's disability coordinator for

accommodations of her medical problems. And in response to her request she was permitted to have a

friend and a family member take notes for her, was given a podium to stand at, and was allowed to take

occasional recesses. But she was denied other help that she requested—a microphone (to en-able her to

project her voice so that it would be audible even when her ability to vocalize was impaired by her

tardive dyskinesia), an interpreter (to articulate her thoughts when she could not express them clearly

herself), and a jury in-struction explaining her disorder, lest the jurors think she was just acting up. Her

difficulty in speaking was likely to be amplified by her having to speak to an entire courtroom. The 7th

Circuit noted in its opinion that without the microphone and the interpreter, Ms. Reed sometimes had to

resort to hand signals, grunts, and other non-verbal attempts at communication that were difficult to

understand. In her testimony at the 1st deposition, Mrs. Keaton did use hand signals and non-verbal

attempts at communication that could not be captured in writing by a court reporter in explaining what

she saw happen to her husband Harvey at the Summit Emerson McDonalds on July 3, 2011. Mrs. Keaton

did that because she did not have the words.

18. In this case, Mrs. Keaton just asked that the state trial court afford her the accommodation in doing

depositions in the manner that her physician, Dr. Heard, said she needed be provided to her: for Mrs.

Keaton to have assistance and to get the questions in advance. Mrs. Keaton received a guardian ad litem

and the areas of questioning in advance. But receiving the areas of questioning in advance is not the same

as receiving the questions in advance. And there is no way for anyone to know that a counsel is going to be asking the same/similar questions in advance if the questions are not provided in advance, so that they can be told that is the wrong thing to do someone with expressive aphasia who has already answered the same/similar questions already. If no one knows what questions are going to be asked, the guardian ad litem had no way of knowing what Kopka Pinkus counsel Ms. Essex was going to ask, so she had no way of telling her that you should not do that to an expressive aphasia sufferer.

19. Because the accommodation that Dr. Heard of IU Health said was needed for Mrs. Keaton was not followed (to have assistance and to get the questions in advance) in total by Judge Welch in issuing an order, the present situation exists.

20. Plaintiffs ask the court for the following relief:

a. to stay the state trial court proceedings in Keaton v. McDonalds (Marion Superior Court CASE NO. _ 49D01-1307-CT-026255) until this matter is heard and determined by this court

b. to find that Evelyn Mills Keaton is a disabled American subject to the Americans With Disabilities Act

c. to order the continuation of the deposition of Evelyn Mills Keaton with the current state trial court order being replaced by an order requiring that Mrs. Keaton have assistance and get the questions in advance such as is the hallmark of the deposition on written questions method with those questions from all counsels being provided to the federal district court and to Mary Hoeller, Mrs. Keaton's guardian ad litem so she can assist Mrs. Keaton ahead of any future deposition

d. if Kopka Pinkus counsel Ms. Essex or Mr. Milstone have no more questions to ask of Mrs. Keaton at a deposition or only want to ask the same/similar questions which have been asked and answered in previous deposition sessions, plaintiffs ask that the depositions of Evelyn Mills Keaton be deemed completed and that an order be issued preventing Kopka Pinkus from maintaining a motion to dismiss on the basis of Mrs. Evelyn Mills Keaton's depositions and preventing Judge Welch or any Marion Superior Court judge from entertaining a motion to dismiss on those grounds

7

=====

**Jurisdiction, venue, cause of action, and Factual Allegations**

21. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, as well as U.S. Const. amend. XIV.  Evelyn Mills Keaton is a disabled American subject to the Americans With Disabilites Act. Title II of the Americans With Disabilites Act's enforcement provision incorporates by reference § 504, 505 and 507 of the Rehabilitation Act of 1973, 92 Stat. 2982, as added, 29 U. S. C. § 794a, which authorizes private citizens to bring suits for money damages. 42 U. S. C. § 12133. The Estate, on behalf of Harvey Keaton, is subject to Title II of the ADA as Harvey Keaton was a disabled American and Evelyn Mills Keaton is a heir of the Estate as the widow of Harvey Keaton.

22. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

23. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

24. Absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute. *Franklin v. Gwinnett Cnty. Pub. Schs*., 503 U.S. 60, 70-71 (1992). If local authorities "fail in their affirmative obligations" under federal law, "the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ*., 402 U.S. 1, 15 (1971). Indeed, a "district court has `not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'" *Louisiana v. United States*, 380 U.S. 145, 154 (1965).

25. This action is also brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution (the equal protection clause, the due process clauses) and is also brought pursuant to Title II and Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.*. Section 504 of the Rehabilitation Act and section 202 of the ADA

both prohibit discrimination against the disabled. Section 504 provides that no otherwise qualified individual with a disability in the United States  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794. The Marion County Courts are part of the Marion County/City of Indianapolis government which receives federal funding in part. Section 202 similarly provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. Kopka Pinkus is a law firm who practices in the Marion County, Indiana courts and within the state of Indiana.

26. Title II of the ADA "prohibits a public entity from denying equal services to individuals because of their disabilities." *Discovery House, Inc. v. Consol. City of Indianapolis,* 319 F.3d 277, 279 (7th Cir. 2003). Specifically, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Title II is intended to apply to "all actions of state and local governments."28 C.F.R. Pt. 35, App. B).

27. Title II of the ADA expressly provides that a state shall not be immune under U.S. Const. amend. XI from an action in federal or state court of competent jurisdiction for a violation of this chapter. 42 U.S.C. § 12202. Accordingly, there can be no dispute that Congress clearly and unequivocally expressed its intent to abrogate sovereign immunity for claims such as Mrs. Keaton makes pursuant to Title II of the ADA as well as Section 504 of the Rehabilitation Act.

28. In *Tennessee v. Lane*, 541 U.S. 509, 522-523 (2004), the United States Supreme Court addressed the obligation courts have to comply with Title II, explaining that the statute prohibits not only irrational disability discrimination, but also "a variety of other basic constitutional guarantees. See 28 C.F.R. §

35.164 (providing that whether compliance under Title II of the ADA would be an undue burden or fundamental alteration is a decision that must be made by the head of the public entity or designee "after considering all resources available for use in funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion").

29. Mrs. Keaton seeks that she receive a reimbursement of costs for having to file in the federal district court to start to receive the reasonable accommodation that she saught initially based on her physician's statement about what is needed because of her disabilities and the need for accommodation given her expressive aphasia and other medical conditions.

30. Section 504 of the Rehabilitation Act. In 1986, Congress amended the Rehabilitation Act to provide that a "State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973...." 42 U.S.C. § 2000d-7. This provision "expressly waives state sovereign immunity for violations of `section 504 of the Rehabilitation Act of 1973 ... by recipients of Federal financial assistance.'" Sossamon v. Texas, 563 U.S. 277, 131 S.Ct. 1651, 1662, 179 L.Ed.2d 700 (2011).

31. Mrs. Keaton states that Marion County court as part of the State of Indiana courts receive some federal financial assistance so she should not have had to go thru extraordinary means to receive ADA accommodation going thru the state courts then to federal district court so that the state court would do what it should have done from the start.

32. Mrs. Keaton also seeks injunctive relief at this point, if it is needed, which will solidify her need for accommodation going forward so that she will have an assistant able to help her to communicate and to monitor her health and ability to communicate without stress which could ameliorate her other medical conditions which require that she lead a low stress and low stimulation lifestyle given she lives with a shunt in her head post aneurysm and has had 2 brain surgeries.  Mrs. Keaton also seeks injunctive relief in that the accommodations her physician states she needs be ordered by the federal district court--- that she receive assistance and get the questions in advance. Mrs. Keaton and the Estate will suffer

discrimination if injunctive relief is not granted.

33. A plaintiff lacks standing to seek injunctive relief unless the plaintiff alleges facts giving rise to an inference that he will suffer future discrimination by the defendant. Mrs. Keaton has done 2 depositions with the guardian ad litem appointed by Judge Welch but given that Kopka Pinkus counsel Ms. Essex says that there are more questions to ask even though she was asking the same/ similar questions at the 2nd deposition that were asked at the 1st deposition---- Mrs. Keaton and the Estate need to pursue injunctive relief on Mrs. Keaton's Title 2 claims so that Kopka Pinkus counsel is prevented from engaging in discrimination by seeking to dismiss a case where they themselves contributed to their own deposition not being completed by acting in a manner that was discriminatory of Mrs. Keaton's disabilities. Mrs. Keaton was put in this position because Judge Welch did not order an adequate enough accommodation which Dr. Heard, the physician of Evelyn Mills Keaton said that she needed----- assistance and to get the questions in advance, and Kopka Pinkus counsel took advantage of a disabled senior citizen by asking the same/ similar questions at the 2nd deposition while claiming they had new questions.

34. It is anticipated that all should proceed smoothly should a written order issue that provides Mrs. Keaton with the accommodation that Dr. Heard, her physician says she needs---- to have assistance and to get the questions in advance. However, plaintiffs feel they need the relief and protection of the federal courts because at a recent court hearing on July 15, 2016, Judge Welch said that Mrs. Keaton was not disabled per the ADA and Mrs. Keaton has visible physical disabilities as well as very noticeable speech limitations and communication disabilities that are apparent if one watches the videotape of the 1st and 2nd deposition sessions. This is not something that one can get a true sense of reading transcripts.

35. If the questions are submitted in advance akin to how deposition on written questions are done and Kopka Pinkus counsel are asking the same/similar questions then the deposition of Evelyn Mills Keaton should be deemed completed. If there are truly new questions, then those questions can be provided to Mrs. Keaton's guardian ad litem who can then assist her. Mrs. Keaton will answer if she can and if she

11

cannot then she cannot. As an expressive aphasia sufferer, Mrs. Keaton has limited vocabulary, struggles to speak normal things and Mrs. Keaton has struggled speech and sometimes says what she does not mean and tries to correct or just cannot find words.

36. Mrs. Keaton is disabled with physical disabilities and an expressive aphasia communications disability as a reult of the aneurysm that she suffered in November of 2006 hence she is substantially limited in the major life activity of speaking and physical movement as she has residual shaking in her left side and tremors in her hands after the aneurysm as well as a shunt in her head and other issues such as high blood pressure and arthritis, and therefore, Evelyn Mills Keaton has a disability within the meaning of the ADA and Section 504. 42 U.S.C. § 12102(1)-(2). 22. Further, Title II regulations make clear that the determination of whether compliance with the ADA statute would result in an undue burden or fundamental alteration must be made by the head of the public entity or a designee "after considering all resources available for use in funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.164.

37. Title II of the ADA requires public entities to provide whatever aids or services that do not impose an undue burden on the public entity in order to ensure to the maximum extent possible that individuals with disabilities receive the benefits and services provided by the entity. Id. There is no undue burden in appointing a guardian ad litem for Mrs. Keaton or in her doing deposition on written questions.

38. No such undue burden analysis was undertaken by Judge Welch.

39. Mrs. Keaton's injuries can be redressed through a declaration that she is a disabled American covered by the Americans With Disabilities Act, and by issuance of injunctive relief to stay the trial court proceedings in the Marion Superior Court Civil 1 until this matter can be resolved in the federal district court. Mrs. Keaton also seeks reimbursement of the costs/ fees that are being expended for her to receive adequate accommodation and any other required relief or damages. See *King v. Indiana Supreme Court*, No. 1:14-cv-01092-JMS-MJD, 2014 WL 5798583, at *4 (S.D.Ind. Nov. 7, 2014) (citing *Grant-Hall v.*

*Cavalry Portfolio Servs., LLC*, 856 F.Supp.2d 929, 936 (N.D.Ill.2012) (holding that claim for "compensatory damages" satisfies redressibility)).

**Parties**

40. Evelyn Mills Keaton is a disabled adult resident of Indianapolis in Marion County, Indiana. Harvey Keaton was disabled and the husband of Evelyn Mills Keaton. He is deceased as of November 4, 2013 but resided in Indianapolis in Marion County, Indiana at the time of his death.

41. The Marion County, Indiana Court System is the local government entity charged with operating the court system in Marion County, Indiana and the City of Indianapolis. The Marion Superior Court was established as the Nineteenth Judicial Circuit of the State of Indiana under the authority of Indiana Code Title 33 [I.C. 33-33-49] and is part of the State of Indiana Court System.

42. Judge Heather Welch is the presiding judge of Marion County Superior Court Civil 1 which is the court handling the wrongful death litigation in which Mrs. Keaton is saught to be a deposition witness. Judge Welch has magistrates who act on her behalf also in Marion County Superior Court Civil 1.

43. Christina Essex and James Milstone are attorneys at Kopka, Pinkus Dolin LLC, a law firm with multiple offices but they work in the Carmel, Indiana office of that law firm and practice in the courts of Marion County/City of Indianapolis and within the state of Indiana. They are opposing counsel in litigation of the Estate and are the persons who opposed Mrs. Keaton receiving the accommodation her physician, Dr. Heard of IU Health, said was needed--- to have assistance and to receive the questions in advance. Kopka Pinkus have filed 2 motions to dismiss the Estate's case based on Mrs. Keaton's deposition issues after she asserted a right to accommodation.

44. Mrs. Evelyn Mills Keaton is a disabled adult who has multiple medical conditions, but her expressive aphasia conditions impacts her ability to verbally communicate in a normal manner. Harvey Keaton was a disabled adult who had physical disabilities when he was struck in the head by a steel divider gate at

the Summit Emerson McDonalds at 2551 N Emerson in Indianapolis on July 3, 2011. Mrs. Keaton was

with Mr. Keaton at the McDonalds and rode with him in the ambulance to the Methodist Hospital

Emergency Room after he was struck in the head by the steel divider gate.

45. Ms. Essex  of Kopka Pincus twice filed a motion to dismiss the Estate's negligence/ wrongful death

litigation in the Marion Superior Civil 1 Court as to Mr. Keaton on the basis of Mrs. Keaton not

attending depositions on oral questions which would have been in violation of her physician's

instructions and statement that she requires an accommodation.

46. Judge Welch denied the 1st motion to dismiss but in the order she also noted that Ms. Essex could

file a 2nd motion to dismiss if Mrs. Keaton was not produced for deposition on oral questions within 45

days, even though there was a pending appeal on the denied motion for protection for Mrs. Keaton to do

deposition on written questions. Requests for all parties to speak with Dr. Heard, the physician of Mrs.

Keaton, were objected to by Kopka Pinkus counsel Christina Essex and denied by Judge Welch or one of

her magistrates, which necessitated the filing for relief in the Indiana Court of Appeals,  the Indiana

Supreme Court, then the U.S. District Court for the Southern District of Indiana. After the federal district

court filing, Judge Welch decided on March 4, 2016 to hold a hearing and hear from Dr. Karen Heard of

IU Health who is the physician of Mrs. Evelyn Mills Keaton about her disabilities and need for

accommodation on March 14, 2016.

47. Ms. Essex filed a 2nd motion to dismiss based on Judge Welch's suggestion in the 1st denied motion

to dismiss order with regard to Mrs. Keaton.  Even though Mrs. Keaton came to 2 deposition sessions

after Judge Welch appointed a guardian ad litem for her, Kopka Pinkus counsel renewed the 2nd motion

to dismiss on the grounds that the deposition could not be completed claiming that it was not due Mrs.

Keaton's health.

48. Mrs. Keaton wants to participate in depositions but is very mindful of her health given she has a

shunt in her head, high blood pressure, shakes/tremors and it is bad for her health to be put in a position where she is frustrated and agitated such as by Kopka Pinkus counsel asking the same/similar questions over and over that she had already asked and answered at the previous deposition even when she indicated she had no more to say or could say no more.

49.  Mrs. Evelyn Mills Keaton has expressive aphasia and other medical conditions, which make her a qualified person with a disability under the Americans with Disabilities  Act. 42 U.S.C. § 12131(2). Mrs. Keaton became disabled following an aneurysm in November of 2006. 50. Mrs. Evelyn Mills Keaton is a retired schoolteacher who taught for 48 years who suffered an aneurysm in her classroom the Friday before Thanksgiving in November of 2006, and as a result of the aneurysm Mrs. Keaton was left with expressive aphasia and other physical conditions.

50. The Marion County, Indiana Courts, an agency of the City of Indianapolis, is a "public entity" subject to Title II of the Americans with Disabilities Act. 42 U.S.C. § 12131(a)(Title 2, ADA).

51. Because of her expressive aphasia condition, Mrs. Keaton often searches for words, may blurt out the wrong word in trying to respond to a question, may have a very delayed response searching for the right word. Sometimes, there are no words and Mrs. Keaton cannot put the response together. Mrs. Keaton still practices her speech with drills she learned in speech therapy in an effort to improve her communication skills. Mrs. Keaton requires assistance to communicate and feels most comfortable if there is someone there to assist her in getting her point across which fosters her making fewer errors in efforts to communicate. Dr. Heard, of IU Health, who is Mrs. Keaton's physician is aware of this and directed that Mrs. Keaton do depositions on written questions with an assistant there to help her if she needs it.

52. Mrs. Keaton wants to participate in the deposition process, but because she has a shunt in her head and can suffer a medical event if she is put under too much stress or is caused excessive headaches Mrs. Keaton's health can be impacted. Mrs. Keaton attempted to do deposition on oral questions with her

guardian ad litem, but Kopka Pinkus counsel Christina Essex put her in a position that was frustrating and causing indignity and discrimination based on her disability asking her the same/similar questions over and over again even though she had alread answered those same/ similar questions at a previous deposition sessionad. Kopka Pinkus counsel Christina Essex was repeatedly asking Mrs. Keaton the same/similar questions that she had already answered so much so counsel was citing to the page number of the 1st deposition at which the question had been asked and answered.

53. Mrs. Keaton's disabilites could have been accommodated without causing a fundamental alteration to the nature of defendants' services and without any financial hardship or costs to any parties. All that was required was that Kopka Pinkus attorneys agree to do deposition on written questions and that if they failed to agree to that that Judge Welch should have issued an order that provided Mrs. Keaton the accommodation her physician said she needs---- to have assistance and to get the questions in advance.

54. The ADA was not followed and the grant of the reasonable accommodation of Mrs. Keaton having assistance and doing depositions on written questions (getting the questions in advance) in accord with the directives of her physician, Dr. Heard of IU Health should be ordered by this court if needed to complete the deposition of Evelyn Mills Keaton, if Kopka Pinkus counsel have new questions to ask of her as opposed to asking the same/similar questions that had already been asked and answered.

55. The expense of granting reasonable accommodation for Mrs. Keaton to do depositions in a manner approved by her physician is minimal and no more than doing deposition on oral questions.

56. The failure to accommodate Mrs. Keaton's disabilities at all times so that she does not suffer represents discrimination based on disability is why Mrs. Keaton seeks reimbursement of costs, fees and for her pro bono guardian ad litem, Mary Hoeller, to be paid for her services in this matter.

57. Mrs. Keaton wants to testify and provide a deposition in the negligence/ wrongful death litigation that relates to her deceased husband. Mrs. Keaton wants to safely give her deposition in the manner that her physician indicates is safe for her and which she feels is safe for her. Mrs. Keaton, if she has time to

study something and take it in, can work at formulating and working out her response in a manner that is dignified for her and reduces the likelihood of her blurting out the wrong word or struggling to find words, or having to take long awkward pauses and struggling in a manner that causes her stress and headaches which are not a desired thing for a person who has a shunt in their head. If she does not have the words to express herself, she will indicate that too. But given her health situation, Mrs. Keaton cannot be upset or frustrated to the point it causes too much frustration, headaches, stress, or things that could be a precursor to an aneurysm or other adverse medical event. A counsel such as Ms. Essex of Kopka Pinkus asking the same/similar questions that have already been answered to the best of Mrs. Keaton's abilities can cause frustration which can be a medical issue for someone like Mrs. Keaton. Dr. Heard said that in testimony before the state trial court. A guardian ad litem cannot stop an overzealous counsel from asking the same/similar questions if she does not know what is going to be asked.

58. Mrs. Keaton feels that neither she, nor other persons like herself, should have to face prolonged and expensive court battles because she seeks to testify in a reasonable manner consistent with the directions of her physician who indicated she needs the reasonable accommodation of having an assistant and getting the questions in advance (which is akin to doing deposition on written questions). Appointing a guardian ad litem and providing the areas of questioning in advance is not an adequate enough of an accommodation, especially when a counsel takes advantage and asks the same/ similar questions repeatedly which have been asked and answer such as what Kopka Pinkus counsel Ms. Essex did at the 2nd deposition session.

59. Further, the Estate should not have to face motions to dismiss based on the depositions of Mrs. Keaton who is disabled and doing the best she can, because of overzelous Kopka Pinkus counsel and Judge Welch refusing to adopt in total the accommodations that Dr. Heard of IU Health says that her patient, Evelyn Mills Keaton, needs.

60. Mrs. Keaton and the Estate have been damaged by defendants' Kopka Pinkus attorneys Christina

Essex and James Milstone refusal to agree to do deposition on written questions, and damaged by Judge

Welch's refusal to follow the ADA and order a reasonable accommodation for her consistent with what

her physician, Dr. Welch of IU Health, says that she needs--- assistance and to receive the questions in

advance. Mrs. Keaton perceives assertion of her ADA rights as assertion of a fundamental right and not

something  that is discretionary where a state trial court is not following the ADA as required as a public

agency subject to the ADA. Federal law is supreme to state law and trial court rules per the supremacy

clause of the U.S. Constitution. Plaintiffs feel they must come to the federal district court because Judge

Welch said at a recent hearing on July 15th that Mrs. Keaton was not found disabled under the ADA

even after the testimony heard from her physician Dr. Heard about her disabilities and need for

accommodation. For that reason, Mrs. Keaton seeks a declaratory judgment that she is a disabled person

who is subject to the ADA and its provisions.

61. Plaintiffs, Mrs. Keaton and the Estate of Harvey Keaton, have had to defend 2 motions to dismiss

based on the disability discrimination of Mrs. Keaton, as both Mrs. Keaton and the Estate of Harvey

Keaton are being caused irreparable harm for which there is no adequate remedy at law, as is the putative

class.  Further, counsel has suffered being put down in state court in ways that I should not have for

trying to ensure a fair process and so that my mother, Mrs. Keaton, receives the adequate accommodation

that she is entitled to as a disabled American subject to the ADA and its protections. Going thru the

battles that we have because of Dr. Heard's statement of needed accommodations (for Evelyn Mills

Keaton) not being followed by Kopka Pinkus counsel and Judge Welch has been expensive and

emotionally exhausting and very stressful for both plaintiffs.

62. Counsel has even asked Judge Welch to recuse herself from the case or partly recuse herself on this

issue, or allow a change of judge, because another very real issue is that this situation that has brought

this matter to federal court has occurred in part because Judge Welch told counsel to carefully follow the

instructions of my Mom's physician in terms of her doing depositions at a court conference on August 21,

2015. Then when counsel did this, Judge Welch sided with Kopka Pinkus counsel even refusing to hear

from Dr. Heard until after counsel first filed about this matter in federal district court. While Judge Welch provided some accommodation after finally hearing from Dr. Heard, the physician of Mrs. Keaton, she did not fully adopt what is needed for Mrs. Keaton in terms of accommodation which is why problems occurred in the depositions when Kopka Pinkus counsel Christina Essex kept asking Mrs. Keaton the same/ similar questions she had already answered causing her frustration which with her set of health issues is a bad thing that can lead to headaches, cause speech shut down, and possibly lead to stress levels that could cause another aneurysm or medical event. Counsel filed motions for recusal or change of judge based on the Indiana trial rule provisions for doing so after the initial time period for change of judge when Kopka Pinkus counsel again tried to receive a ruling on a 2nd motion to dismiss based on Mrs. Keaton's deposition issues and disability, and received a denial of that the filing when it was initially made saying was time barred then recently another denial which did not substantively address the motion made.

63. Now counsel is contesting a request for sanctions in state court filed by Kopka Pinkus counsel Christina Essex based on the filing of the motion for recusal or change of judge claiming it is frivolous even though counsel is just doing her job. In *Patterson v. State*, the Indiana Appeals Court found that a trial counsel was ineffective for not seeking a recusal of the judge for an obvious conflict, then ordered a change of judge on reversal and remand. In that case, the judge had previously been a prosecutor. 926 N.E.2d 90, 93 (Ind. Ct. App. 2010). In this case, Judge Welch made comments to plaintiff/counsel to follow carefully what my mother's physician said with regard to her testifying (in case proceedings that occurred on August 21, 2015; 08/21/20Status Conference  (10:00 AM) (Judicial Officer Welch, Heather A) 09/11/2015   Reset by Court to 08/21/2015)), then when I tried to do that my efforts to do that which the judge stated I should do were denied when challenged by Kopka Pinkus counsel. And Judge Welch also wrote on an order denying defendant's 1st motion to dismiss that she would entertain a 2nd motion to dismiss on the basis of Mrs. Keaton's disability issues as they relate to her doing depositions in this matter. (12/08/2015 Order Denying Motion to Dismiss (Judicial Officer: Welch, Heather A )Order

Denying Defendant's Motion to Dismiss. Parties notified. Order Issued: 12/07/2015)). If plaintiff/counsel did not seek a change of judge or recusal, then I would not be doing my job because Judge Welch made 2 public statements that impacted each party's rights, which arguably requires recusal or partial recusal on that particular issue. See *Thakkar v. State*, 644 N.E.2d 609 (Ind. Ct. App. 1994). Plaintiff/counsel would not be doing her job if she did not seek a change of counsel or recusal under the set of facts that occurred in this case. I also am a caregiver with a duty to look after my Mom's health and wellbeing.

64. Counsel was participating in a court conference by CourtCall on 8/21/2015 when Judge Welch made these remarks to carefully follow what my Mom's physician said she should do in terms of doing depositions. I recall this because Mom and I were huddled by a speakerphone in Steuben County that day, as I had court in Steuben County in Angola, Indiana that day. Counsel did ask for the audio of this court call from the current court reporter for Marion Superior Civil 1, to listen to it again and to have a transcript made of that court proceedings. But Marion Superior Civil 1 court reporter, Latoya Booth, indicated that there was no tape of this court conference. But because of how counsel has been treated in this matter I did want to secure a copy of the audio of that court ordered conference and have it transcribed so that all parties can see that I have been doing my job as I should do in terms of seeking a recusal or change of judge where the judge has made comments on a matter on the record, then made other comments encouraging Kopka Pinkus counsel Ms. Essex to maintain a 2nd motion to dismiss while plaintiffs pursued proper accommodation for Mrs. Keaton given her real disabilities. Mrs. Keaton's disabilities are very apparent if a party watches the videotape of the depositions. The need for accommodations that Dr. Heard says my Mom needs are real.

65. Where a judge has instructed one counsel to follow the instructions of their disabled mother's physician, then encouraged opposing counsel to seek a 2nd motion to dismiss because the plaintiff/counsel is trying in good faith to follow the advice of her disabled mother's physician about her doing a deposition----- the judge has inadvertently crossed a line that could make a reasonable person aware of all of the circumstances question the judge's impartiality in this matter. And in this context a

"reasonable person" has been described as the proverbial average person on the street with knowledge of all the facts and circumstances alleged in the motion to recuse. (discussed in *In re Wilkins*, 780 NE 2d 842, 848 (Ind. 2003). Plaintiff/counsel has argued that Judge Welch has inadvertently put herself in a position where her impartiality and fairness can be questioned by a reasonable person on the street telling plaintiff/counsel to follow the instructions of my mother's physician in terms of her providing deposition testimony, and by encouraging opposing counsel Ms. Essex to pursue a 2nd motion to dismiss on the basis of plaintiff/counsel trying to do in good faith what Judge Welch had instructed me to do.

66. Further, most reasonable persons on the street do not want to be tagged with actions they never did or undertook. (Counsel is a former military officer, so I am a person who does not want to be tagged adversely or tagged with something I did not do and people like me who are former military officers are perhaps hypersensitive about these sorts of things moreso than most people I will concede.) When Judge Welch explained why she wrote "over plaintiff's objection" on a motion that plaintiff did not object to, in that somehow that was to benefit me that did not feel right because plaintiff represents her family members' interests and neither my Mom or sister are going to care whether I object to a continuance motion or not. So all the same plaintiff/counsel is not a person who would want to have it written on an order that I objected where I did not. Plaintiff/counsel is a former military officer (Ordnance and JAG) so I probably am more sensitive to this sorta thing moreso than most of the population. I am the sort of person to openly admit my imperfections.

67. Counsel took Judge Welch saying to carefully follow what my Mom's physician says about her doing depositions seriously and to mean that the court would follow whatever recommendations that Dr. Heard said were needed for my Mom to do depositions. However, what Dr. Heard said that Mrs. Keaton needed from the start did not occur when Kopka Pinkus counsel objected, even objecting to hearing from Dr Heard, the physician of Mrs. Keaton twice. And because of the actions of Kopka Pinkus counsels and Judge Welch, thousands of dollars and nearly 100 hours of time has had to be expended so far on this issue that would not have had to be expended if the accommodations that Dr. Heard said Mrs. Keaton

needed had been adapted from the start.

68. But given what has occurred--- plaintiffs ask the federal district court to step in and stop irreparable harm being caused to the plaintiffs based on Mrs. Keaton not being afforded the full accommodation she needs as a disabled American senior citizen to participate fully and safely with dignity in state trial court deposition proceedings, and to afford the Estate the ability to have its case continue without facing motions to dismiss based on the disabilities of Evelyn Mills Keaton who is a disabled American trying to participate in depositions while also looking after her health. And a guardian ad litem such as Mary Hoeller is not a mindreader. She cannot tell a counsel to not ask the same/ similar questions to an expressive aphasia sufferer when she does not know what they are going to ask.

69. Mrs. Keaton all along wanted to follow the directions of her physician, Dr. Heard of IU Health, which have never been fully adopted by the state trial court hence Mrs. Keaton was put in a position where she suffered discrimination, indignity and potential adverse health consequences because of overzealous Kopka Pinkus Counsel Christina Essex asking the same/similar questions repeatedly that had been asked and answered at the 2nd deposition session and Judge Welch not fully adopting what Dr. Heard said Mrs. Keaton needed as an accommodation---- to have assistance and to get the questions in advance.

70. Mrs. Keaton, like Ms. Reed in *Reed v Illinois*, seeks the accommodation that she needs which her physician says that she needs because failure to follow the instructions of Dr. Heard have resulted in Mrs. Keaton suffering discrimination and indignity based on her disability by the actions of Kopka Pinkus counsel Ms. Essex and the order of Judge Welch not fully adapting what Dr. Heard said is needed for Mrs. Keaton to be fully accommodated----- to have assistance and to get the questions in advance (such as with deposition on written questions).

71. Based on the holding of the 7th Circuit in *Reed v Illinois*, Mrs. Keaton should have an *equal* opportunity to participate in, and enjoy the benefits of, a service, program or activity of a public entity and Mrs. Keaton cannot do that unless she has assistance and gets the questions in advance, which is

what her physician, Dr. Heard of IU Health said in her statement and testimony before the state trial court. This is needed so that Mrs. Keaton does not suffer discrimination or indignity in the process of particapting in proceedings or suffer frustrations and stress that make it close to impossible for her to communicate given her expressive aphasia and other medical issues. Mrs. Keaton is a heir of the Estate so also stands to lose in financial ways if the Estate is unable to secure a recovery in the state trial court case because she is suffering discrimination based on her disability by not being afforded a full accommodation so she can fairly and safely and equally participate in public state court proceedings. Mrs. Keaton is also subject of a motion for partial summary judgment based on loss of consortium (seeking $241,200 in damages) and caregiving and household services (seeking $113,449 in damages) which her husband Harvey provided to her after she sustained the aneurysm til he could do that no longer after the head injury sustained by the head strike by the steel divider gate as he was never the same after that, and shortly after that injury was hospitalized with vertigo then had worsening health after that July 3, 2011 incident. Currently, there are pending motions for partial summary judgment seeking over $675,000 in damages. Harvey Keaton was a devoted caregiver to his wife after she sustained an aneurysm in November 2006 til he himself sustained injuries and developed vertigo then other medical issues after he was struck in the head by a steel divider gate at the Summit Emerson McDonalds on July 3, 2011.

72. What counsel is saying is apparent if a party looks at the 1st and especially the 2nd deposition videotape deposition tape where the same/ similar questions that have been asked and answered are being asked over and over again by Kopka Pinkus counsel Christina Essex.

73. Further, the issue is Mrs. Keaton suffering discrimination based on her disability while participating in state trial court proceedings. For one court (the state court) to deny full accommodations without which a disabled person has no chance of prevailing is discrimination based on disability---- Mrs. Keaton having assistance and getting the questions in advance is needed for her to participate in a fair and equal way in the deposition process so that she is not frustrated or put in a situation where her limited speech is

made more difficult or impossible due to being put in a physical state where communication is not possible. Not fully accommodating Mrs. Keaton is to deny the plaintiffs a full and fair opportunity to vindicate their claims as Mrs. Keaton is also a heir of her husband's estate and a witness to his being struck by a steel divider gate at the Summit Emerson McDonalds on July 3, 2011 and Mrs. Keaton explains what happened as best she could at the 1st deposition session sometimes using hand gestures when she lacked words. But in spite of doing her best to answer questions, Kopka Pinkus counsel Christina Essex still engaged in asking the same/similar questions at the 2nd deposition that had been asked/answered even though Dr. Heard had said in testimony before the court that causing frustration is bad for Mrs. Keaton's health. Hence, plaintiffs ask that this federal district court apply the *Reed* case holding to this matter and provide the relief requested by plaintiffs.

74. Further, plaintiff wants to note that none of the defendants should take offense at this federal court filing. Plaintiff is doing her job as the personal representative of her father's estate, a caregiver to a disabled mother, and being a counsel. At the hearing prior to the one where Dr. Heard presented testimony, counsel was told by Judge Welch that I should have asked for a hearing with Dr. Heard where I had asked for 2 such hearings both of which were denied until I initially filed in federal district court. Kopka Pinkus counsel Christina Essex wrote in a court pleading that she was trying to do what Dr. Heard wanted in terms of doing deposition on oral questions, but when Dr. Heard clarified that she wanted Mrs. Keaton to have assistance and get the questions in advance Kopka Pinkus counsel Ms. Essex did not try to do what Dr. Heard wanted and Kopka Pinkus counsel argued only for deposition on oral questions that she wanted. And a battle unlike I've ever experienced in my career has ensued on these issues trying to secure for my Mom what her physician says she needs in terms of an accommodation. Even Judge Welch told me to follow what my Mom's physician said was right for her carefully. It is just Judge Welch did not follow in total what Dr. Heard said was right for my Mom in terms of doing depositions. Kopka Pinkus counsel Christina Essex did not try to do what Dr. Heard wanted like she said she would in court pleadings.

75. Counsel wants to note that I have been put in what feels like a toxic situation because defendants have shifting inconsistent positions. Counsel finds herself in what has been a battle because defendants have shifting inconsistent positions in this case on this matter. Counsel is writing all of this into the pleadings because I do not want to be put down, talked down, referred to in a derogatory way, or accused of being unprofessional or disparaging anyone for being a counsel who is speaking an objective truth that is backed up by case pleadings and case events. As a party/counsel, I'm dealing with defendants with shifting inconsistent positions. Even if I do the right thing in response and am appropriately respectful while contesting something, counsel is put in a no win situation and will be disparaged because of dealing with defendants who shift their position, while plaintiffs have been consistent throughout. But because the defendants are the state trial court judge and opposing counsel is from a big regional law firm who represents Travelers Insurance who is the insurer for state court trial defendant Summit Restaurant Management, while counsel is a solo attorney who is the representative of her father's estate and her disabled mother's caregiver --- as a counsel I am put in a position where I am the low person in terms of being able to have a voice that is taken seriously in these matters. If I am honest in making argument, then I may be tagged negatively or tagged with saying something unprofessional because I am speaking honestly to shifting inconsistent positions of defendants. But I love my Mom and am her caregiver given my Dad's injury/death, and made a promise to my Dad to see this thru for him, and so I take the approach that I am going to do the best that I can. I am doing my best as my Mom's caregiver, my Dad's estate personal representatitve, and doing my job as an attorney/counsel in this matter to the best of my ability.

76. As a counsel, I am imperfect as these are new fields of law to me somewhat. There is no caregiver manual. I became Mom's part-time caregiver after the aneurysm as I looked after Mom in the afternoons prior to Dad's injury/death but after Dad's injury/death that became more of a daily thing. Mom goes to court with me all over the state. This is my 1st time being personal representative of an estate. And I typically deal with DOT/transportation cases with some work also being underaken in general practice,

bankruptcy and real estate matters. But my Mom would not have a guardian ad litem if I had not filed initially in federal district court. I consult with other personal injury counsel at times. Before filing the most recent motion for change of judge recusal, I spoke with counsel referred to me thru the Indianapolis Bar Association and a former Johnson County Superior Court Judge Kim Van Valer to ensure that I am seeing things properly. I am imperfect, but I am respectful to courts and staff and opposing counsel and come in good faith. Many of my pleadings are long as I try to document things and make a record, but that does not violate a fax filing policy nor is that unprofessional. I have taken to having as little contact as possible with the state trial court and opposing counsel, often sending my sister to do court filings. I also have been reviewing audio of some trial court proceedings and there is nothing unprofessional or abnormal going on. I make a record for appeal where I know something is wrong. That is what I am supposed to do as a counsel in a case. Plaintiff/Counsel and her mother, Mrs. Keaton, have both had to endure more than we should have because my Mom did not receive the accommodation she needs from the start. Plaintiff/counsel persevered to do right by my Mom and her health so she has a guardian ad litem. Plaintiffs come to the federal district court for relief because Dr. Heard saying that Mrs. Keaton needs the questions in advance needs to be ordered to prevent an injustice occurring based on the discrimination of Evelyn Mills Keaton based on her disabilities.

77. Mrs. Keaton asks this court to correct what Judge Welch did not do--- order that Mrs. Keaton get the questions in advance of any deposition if Kopka Pinkus truly has unanswered deposition questions; but if Kopka Pinkus counsels have nothing new to ask as they asked nearly entirely the same/similar questions at the 2nd deposition that had been asked/answered at the 1st deposition, then order the depositions of Evelyn Mills Keaton deemed closed and grant the relief requested by plaintiffs.

**Trial demand**

78. Plaintiff requests a trial on all claims so triable.

**Claims for relief and Request for relief**

26

WHEREFORE, Plaintiffs ask the court for the following relief:

a. to immediately stay the state trial court proceedings in Keaton v. McDonalds (Marion Superior Court CASE NO. _49D01-1307-CT-026255) until this ADA matter is heard and determined by this court so that the case is not dismissed on the basis of an ADA issue related to Mrs. Evelyn Mills Keaton that should not be the subject of a motion to dismiss

b. to order that Kopka Pinkus deposit with the federal district court the original videotape of the 2 depositions of Evelyn Mills Keaton and corresponding certified transcripts of these 2 deposition sessions (Plaintiff counsel was told to purchase the transcript and deposition and is in the process of doing that as I had to invade an IRA to get funds to do so given the costs total @$750 to get a copy of the 2nd deposition videotape and transcripts which will take @10 days and costs to get the 1st deposition videotape/transcript are not known but will be soon as I'm being sent that as I've ordered those items. )

c. to issue a declaratory judgment that Evelyn Mills Keaton is a disabled American subject to the Americans With Disabilities Act subject to the rights and protections of the ADA

d. to order the continuation/completion of the deposition of Evelyn Mills Keaton with the current state trial court order being amended or replaced by an order adopting what Dr. Heard of IU Health states is needed for Mrs. Keaton to maximize the likelihood of her successfully participating in depositions----1) that Mrs. Keaton have assistance and 2) that Mrs. Keaton get the questions in advance such as is the hallmark of the deposition on written questions method with those questions from all counsels being provided to the federal district court and to Mary Hoeller, Mrs. Keaton's guardian ad litem so she can assist Mrs. Keaton ahead of any future deposition

e. to order the deposition of Evelyn Mills Keaton complete if Kopka Pinkus counsel Ms. Essex or Mr. Milstone have no more questions to ask of Mrs. Keaton at a deposition or if Kopka Pinkus counsel only want to ask the same/similar questions which have been asked and answered in previous deposition sessions or which Mrs. Keaton has indicated she has nothing more to say; plaintiffs ask that the depositions of Evelyn Mills Keaton be deemed completed if this is the state of things and asks the federal

court to issue an order preventing Kopka Pinkus from maintaining a motion to dismiss on the basis of Mrs. Evelyn Mills Keaton's deposition issues given her disabilities and her doing her best with those disabilities and preventing Judge Welch or any Marion Superior Court judge from entertaining a motion to dismiss on those grounds relating to Mrs. Keaton doing depositions given her disabilities

f. Award all other proper relief that is just, proper and necessary to include consideration of awarding fees to the guardian ad litem of Mrs. Keaton, Mary Hoeller, for her participation in this case.

Respectfully submitted,

/s/ Evelyn Lecia Keaton

Evelyn Keaton Atty (IN #19431-49)

Law Office of Evelyn Keaton

PO Box 20864

Indianapolis, IN 46220

Phone: 317-373-0368

Fax: 702-947-6722

Email: elkeaton@yahoo.com

Attorney for Plaintiffs

28